**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
JACKSON DIVISION**

GERALDINE CHAN AS ADMINISTRATRIX
OF THE ESTATE OF RANDY LYNN BREWER,
DECEASED AND ON BEHALF OF
THE HEIRS AT LAW AND BENEFICIARIES
OF RANDY LYNN BREWER, DECEASED                                    PLAINTIFF

vs.                                          CIVIL ACTION NO. 3:05-CV-254 HTW-LRA

ROGER COGGINS AND
BOYD BROS. TRANSPORTATION, INC.                                 DEFENDANTS

**ORDER GRANTING MOTION TO STRIKE AND
MOTION FOR SUMMARY JUDGMENT**

Before this court are the Motion to Strike Expert Witness [docket # 16] filed

pursuant to Rule 702[1] of the Federal Rules of Evidence, and Motion for Summary

Judgment [docket # 17] submitted under Rule 56(b)[2] and (c) of the Federal Rules of

---

[1]Rule 702 of the Federal Rules of Evidence states:  If  scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, or experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

[2]Rule 56(b) of the Federal Rules of Civil Procedure provides, in pertinent part, that "[a] party against whom a claim . . . is asserted or a declaratory judgment is sought may, at any time, move with or without supporting affidavits for a summary judgment in the party's favor as to all or any part thereof."

Rule 56(c) of the Federal Rules of Civil Procedure provides, in pertinent part, the following:

The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

1

Civil Procedure, filed by defendants Roger Coggins ("Coggins") and Boyd Brothers

Transportation, Inc. ("Boyd Bros.").  The plaintiff, Geraldine Chan, administratrix of the

estate of Randy Lynn Brewer, deceased, opposes the motions.  Chan contends that

Coggins, while operating a Boyd Bros. tractor-trailer, caused Brewer's death by striking

Brewer with said tractor-trailer by failing to allow Brewer appropriate time to transverse

the intersection before proceeding.  Plaintiff accuses Coggins of acting negligently and

recklessly and sues Boyd Bros. under the doctrine of *respondeat superior*.

## Background Facts and Procedure

On or about August 7, 2001, defendant Roger Coggins operated a 1997 truck

tractor and semi-trailer owned by defendant Boyd Bros.  After having traveled on

Interstate 20 ("I-20") in a westerly direction in the Jackson, Mississippi, metropolitan

area, Coggins exited off I-20 onto the West off-ramp and proceeded towards the

intersection of Gallatin Street, where the exit ramp splits.  The left lane permits traffic to

turn left and proceed South on Gallatin Street.  The other lane curves right, allowing

traffic to head North on Gallatin Street.  Coggins, driving in the right lane, then came to

a complete stop waiting to proceed North on Gallatin Street.

Plaintiff, Randy Brewer, was a vagrant alcoholic who would live from time to time

in the woods adjacent to the intersection of the exit ramp and Gallatin Street.  Brewer

would panhandle for money at that very intersection as a means of supporting himself

and his alcohol habit.  On this particular day, Brewer awoke around daylight in the

woods adjacent to the intersection with a friend named Marshall Allen.  After they

awoke, they consumed between the two of them a full bottle of Night Train, which has

2

an alcohol content of 32.5%.  After consuming the alcohol, Brewer and Marshall Allen proceeded to the intersection where they panhandled passing motorists until they had enough money to go to the liquor store which opened at 10:00 a.m.  After the liquor store opened at 10:00 a.m., Brewer and Marshall Allen bought two more bottles of Night Train and consumed both bottles.  At the time of the accident, that being 6:44 p.m., Brewer and Allen had consumed three "fifths" of liquor and Brewer had eaten no food since Brewer had awakened that morning.  By his own admission in his deposition, Brewer was intoxicated and "pretty drunk."

Prior to the time of the accident, Brewer had positioned himself on the island which separated the two lanes of traffic from the off-ramp, the left lane going South on Gallatin, the right lane going North on Gallatin.  Further back up the exit ramp, Brewer's friend, Marshall Allen, who is confined to a wheelchair, had positioned himself on the right side of the off-ramp in the roadway.  Coggins, in attempting to navigate the exit ramp toward Gallatin Street, had to move his tractor-trailer to the left side of the right lane to avoid hitting Marshall Allen, who was in his wheelchair sitting in the roadway. After passing Allen in his wheelchair, Coggins proceeded to navigate his tractor-trailer up to the intersection of the off-ramp and Gallatin Street and bring his truck to a complete and full stop.

After coming to a complete stop, Brewer approached within one to two feet of Coggins' driver's side door asking for money.  While not rolling down his window, Coggins told Brewer that he had no money for him and motioned for him to back up away from the truck.  Subsequently, Brewer took a half a step to one step back toward the island.  As he witnessed Brewer proceed to step back away from the truck, Coggins

3

engaged his truck and proceeded to attempt to enter Gallatin Street in a northerly direction.  Subsequently, says Coggins, Brewer moved forward toward the back of the truck and was struck by the trailer tires of the Boyd Bros. tractor-trailer rig.  Brewer, who was deposed by the parties while Brewer was in the hospital, later died from those injuries.

**<u>Relevant Law and Analysis</u>**

<u>Jurisdiction</u>

This court has subject matter jurisdiction over this dispute pursuant to diversity of citizenship as codified at Title 28 U.S.C. § 1332.[3]  Complete diversity of citizenship exists between the parties and the amount in controversy exceeds $75,000, exclusive of interests and costs.  Geraldine Chan, the administratrix of the estate of Randy Lynn Brewer, is a citizen of Mississippi.  Before his death, Brewer was a resident citizen of Mississippi.  Roger Coggins is an adult resident citizen of the State of Alabama and Boyd Bros. also is a citizen of Alabama.

<u>Motion to Strike Plaintiff's Expert Witness</u>

In *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 113 S. Ct. 2786, 125 L. Ed. 2d 469 (1993), the United States Supreme Court set out the criteria that district courts are to follow in assessing challenged expert testimony offered under Federal Rules of Evidence 702.[4]  As the Court stated, "Proposed testimony must be

---

[3] Title 28 U.S.C. § 1332 (a) provides:  The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between (1) citizens of different States . . .

supported by appropriate validation — i.e., 'good grounds,' based on what is known.  In

short, the requirement that an expert's testimony pertains to 'scientific knowledge'

establishes a standard of evidentiary reliability."  *Id.* at 590.  Accordingly, the Supreme

Court has held that a trial court has a duty to screen expert testimony for both its

relevance and reliability.  *Id.*  An expert, to state an opinion, must have a "reliable basis

in the knowledge and experience of his discipline."  *Id.* at 592.  Thus, this court must

determine that the reasoning and methodology underlying the testimony is scientifically

valid and that the reasoning and methodology can properly be applied to the facts in

issue.  *Id.* at 592–93.  Under Rule 703,[5] says the United States Supreme Court, an

expert must base his opinion upon facts and data of a type reasonably relied upon by

experts in the field.  *Id.* at 595.

Although the Supreme Court has suggested that the *Daubert* standard is a

flexible one, the district court should "make certain that an expert, whether basing

testimony upon professional studies or personal experience, employs in the courtroom

the same level of intellectual rigor that characterizes the practice of an expert in the

relevant field."  *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152, 143 L. Ed. 2d 238,

---

[5]Federal Rule of Evidence 703 reads as follows:

The facts or data in the particular case upon which an expert bases an opinion or inference may be those perceived by or made known to the expert at or before the hearing.  If of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject, the facts or data need not be admissible in evidence in order for the opinion or inference to be admitted.  Facts or data that are otherwise inadmissible shall not be disclosed to the jury by the proponent of the opinion or inference unless the court determines that their probative value in assisting the jury to evaluate the expert's opinion substantially outweighs their prejudicial effect.

119 S. Ct. 1167 (1999);  *Daubert*, 509 U.S. at 592;  *Vogler v. Blackmore*, 352 F.3d 150 (5th Cir. 2003).

*Daubert* also instructs the trial court on the procedural mechanics for resolving disputes relative to the expert's competence to testify under the standards enunciated in that opinion.  That is, *Daubert* directs that the district court determine admissibility under Rule 702 by following the directions provided in Federal Rule of Evidence 104(a).[6]  Rule 104(a) requires the trial judge to conduct preliminary fact-finding, to make a "preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the facts in issue."  *Daubert*, 509 U.S. at 592–93.

The party sponsoring the expert testimony has the burden of showing that the expert's findings and conclusions are based upon the scientific method and, therefore, are reliable.  "This requires some objective, independent validation of the expert's methodology.  The expert's assurances that he has utilized generally accepted scientific methodology is insufficient."  *Moore v. Ashland Chemical, Inc.*, 151 F.3d 269, 276 (5th Cir. 1998).  "The proponent[s] need not prove to the judge that the expert's opinion is correct, but [they] must prove by a preponderance of the evidence that the testimony is reliable."  *Id.*

In seeking to perform its role as the juridical gatekeeper as envisioned by *Daubert*, this court conducted a hearing on October 16, 2006, during which time the

---

[6]Federal Rule of Evidence 104(a) provides in pertinent part: "preliminary questions concerning the qualifications of a person to be a witness, the existence of a privilege, or the admissibility of evidence shall be determined by the court, subject to the provisions of subdivision (b)."

court heard the arguments of both parties, as well as the proposed expert testimony of Victor E. Holloman.  The defendant does not question Holloman's expertise in the field of accident reconstruction.  Defendants question, instead, his methodology in arriving at his ultimate conclusion that Coggins had failed to keep and maintain a proper lookout, or that Coggins had negligently or actually pulled to the left side of the roadway as he started to leave which caused Brewer's injuries.

The court has carefully reviewed Victor E. Holloman's report.  Hollomon's analysis positions Brewer first at the Coggins' tractor-trailer, then a few feet back after Brewer stepped away.  With various measurements and drawings, Hollomon seeks to show that when Coggins moved forward, the tractor-trailer then struck Brewer.  This court is not persuaded that Holloman's methodology in reaching this conclusion passes the *Daubert* test.  First, this court finds that Holloman's opinion has no scientific basis. Hollomon's diagrams utterly fail properly to address turning radius.  If Brewer was positioned where Hollomon claims he was, upon turning onto Gallatin Street, the tractor-trailer could not have struck Brewer since he would have been completely outside of the turn radius.

Next, this court finds that Holloman's opinions are contrary to the facts.  Coggins' testimony is at odds with Hollomon's positioning of Brewer.  According to Coggins, Brewer stepped away from the tractor-trailer, then stepped forward again.  An eye-witness, Joseph Pettit, agreed with Coggins.  By their testimony, Brewer's intentional movement into the path of the tractor-trailer was the sole cause of the accident, since Coggins was already moving when Brewer took that fatal step.

Since  Holloman's opinions fail to cross the threshold for establishing that he

7

qualifies as an expert in this case, this court holds that Holloman is not qualified under Rule 702 to opine whether Coggins recklessly and/or negligently ran over Brewer.  This court, therefore, grants defendants' motion to strike Hollomon as an expert witness. Stripped of an expert, and without any other credible evidence, say defendants, plaintiff's case is ripe for summary judgment.

Summary Judgment Standard

Summary judgment is appropriate where the facts and law as represented in the pleadings, affidavits and other summary judgment evidence show that no reasonable trier of fact could find for the nonmoving party as to any material fact.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251,106 S.Ct. 2505, 91 L.Ed.2d 202 (1986);  *Celotex Corporation v. Catrett*, 477 U.S. 317, 323-25, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Martinez v. Schlumberger, Ltd.*, 338 F.3d 407, 411 (5th Cir. 2003);  *Terrebonne Parish Sch. Bd. v. Mobil Oil Corp.*, 310 F.3d 870, 877 (5th Cir. 2002).  "A fact is 'material ' if it 'might affect the outcome of the suit under governing law.'"  *Bazan v. Hidalgo County,* 246 F.3d 481, 489 (5th Cir. 2001).  The nonmoving party may not rest upon mere allegations or denials in the pleadings but must present affirmative evidence, setting forth specific facts, to show the existence of a genuine issue for trial.  *See Celotex Corporation*, 477 U.S. at 322-23;  *Anderson*, 477 U.S. at 257;  *Matsushita Electric Industrial Company v. Zenith Radio Corp.*, 475 U.S. 574, 585-86, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).  All the evidence must be construed "in the light most favorable to the non-moving party without weighing the evidence, assessing its probative value, or resolving any factual disputes."  *Williams v. Time Warner Operation, Inc.*, 98 F.3d 179,

181 (5th Cir. 1996); *Brown v. City of Houston*, 337 F.3d 539, 540 (5th Cir. 2003);

*Daniels v. City of Arlington*, 246 F.3d 500, 502 (5th Cir.), *cert. denied*, 534 U.S. 951,

122 S.Ct. 347, 151 L.Ed.2d 262 (2001).  Furthermore, only reasonable inferences can

be drawn from the evidence in favor of the nonmoving party.  *Eastman Kodak Company*

*v. Image Technology Services, Inc.*, 504 U.S. 451, 469 n. 14, 112 S.Ct. 2072, 119

L.Ed.2d 265 (1992).  "If the [nonmoving party's] theory is ... senseless, no reasonable

jury could find in its favor, and summary judgment should be granted." *Id.* at 468-69.

The nonmovant's burden is not satisfied by "some metaphysical doubt as to material

facts," conclusory allegations, unsubstantiated assertions, speculation, the mere

existence of some alleged factual dispute, or "only a scintilla of evidence."  *Anderson*,

477 U.S. at 247-48;  *Hart v. O'Brien*, 127 F.3d 424, 435 (5th Cir.1997), cert. denied,

525 U.S. 1103, 119 S.Ct. 868, 142 L.Ed.2d 770 (1999).  "Unsubstantiated assertions,

improbable inferences, and unsupported speculation are not sufficient to defeat a

motion for summary judgment."  *Brown*, 337 F.3d at 540;  *Bridgmon v. Array Systems*

*Corporation*, 325 F.3d 572, 577 (5th Cir. 2003);  *Hugh Symons Group, plc v. Motorola,*

*Inc.*, 292 F.3d 466, 468 (5th Cir.), *cert. denied*, 537 U.S. 950, 123 S.Ct. 386, 154

L.Ed.2d 295 (2002).  Summary judgment is mandated if the nonmovant fails to make a

showing sufficient to establish the existence of an element essential to its case on

which it bears the burden of proof at trial.  *Nebraska v. Wyoming*, 507 U.S. 584, 590,

113 S.Ct. 1689, 123 L.Ed.2d 317 (1993);  *Celotex Corporation*, 477 U.S. at 322.

<u>Analysis</u>

An account of the accident is provided by an eye-witness, Joseph Pettit.  At his

deposition, Joseph Pettit testified as follows:  he was stopped at the intersection of Gallatin and the off-ramp at the time Roger Coggins approached the intersection and came to a stop.  Pettit observed Randy Brewer accosting the truck driver to the point of being right up next to his truck.  Pettit next observed the truck driver using his hands to motion the individual away.  Subsequently, Pettit observed Brewer take a step away from the parked truck.  Roger Coggins engaged his truck and began to move forward. Brewer, says Pettit, voluntarily put himself within the path of the truck.  Specifically, Pettit testified as follows:

Q.     In your thinking, basically he stepped in front of the wheels?

A.     Well, he had to because there is no way the wheels could have hit him unless he stepped into them, because he was far enough away to where if he would have stood still, the truck would have gone on by.  If he would not have stepped forward, he would not have gotten hit, because I thought about that right then.  I was like, you know, how could this have happened with this guy stepping back from the truck other than him stepping into the path of the truck.

Q.     Do you think he fell down before it ran over it?

A.     No he didn't . . He didn't fall down.

Q.     Alright. Well, he went down before.

A.     It appeared that he put himself in front of the wheels. That's the way it appeared to me.

Q.     Well, what part of his body did he put in front of the wheels?

A.     Had to have been his legs or his whole body to get . . to get hit like he did where his face was down on the pavement. . I mean, it rolled over both feet, so he had to get both feet under both of those wheels.

(See Pettit's deposition, p.18, ln 22-25; p.19, ln 1-12).

* * *

Q.    So had the truck started moving when he threw his self down in front of it?

A.    The truck driver started to pull forward and go into the right, and that is when he stepped forward.  That is why I say there is no way he could have been run . . his foot could have been run over because he had to move forward into the wheels.  Because like I said before, there is a space . . there was a space between the back of the cab and the wheels of the . . the wheels of the tractor.

(See Pettit's deposition, p.20, ln 4-13).

Roger Coggins in his deposition tells a story substantially the same as that heard from Joseph Pettit.  Coggins said that he engaged his truck to proceed onto Gallatin Street and through his spot mirror witnessed Randy Brewer voluntarily place himself into the path of the trailer tires following the tractor being driven by Coggins.  (See Coggins' deposition, p.27, ln 16-19; p.28, ln 14-20; p.29, ln 2-25).   Coggins testified that he had moved approximately five feet from his original stopped position.  (See Coggins' deposition, p.27, ln 20-22).

Brewer's testimony is also instructive on his sobriety and how the accident occurred.  Brewer, age 35 at the time of his death, and an alcoholic since the age of 11, who regularly slept in the woods, testified as follows:

Q.    Were you intoxicated at the time of the accident?

A.    Pretty much an everyday thing...

Q.    Well on the day this accident happened you were intoxicated?

A.    Yes.

(See Brewer's deposition, p.30, ln 11-22).

11

Q.     Now, how is it that you have gone from a foot away from the truck
       and as you begin to turn away to go further back than a foot, how
       did you get under the truck?

A.     He pulled me under.

Q.     How did he pull you under if you were still a foot away from him?

A.     He was going.

Q.     He was going the opposite direction, was he not?

A.     Yes.

Q.     He would have been going.. as you turn right, he would have been
       going directly off to your left arm as he goes straight out.

A.     He was going out toward the light.  He was proceeding to follow his
       friend....

(See Brewer's deposition, p.65, ln 2-17).

        Thus, no party disputes that Coggins' truck came to a complete stop before

Brewer ever approached the truck.  Brewer stepped away, and then, according to

Coggins and Pettit, Brewer stepped forward into the path of the tractor.  Plaintiff has no

viable proof that Roger Coggins operated his vehicle in a negligent and reckless

manner.  Although plaintiff tries, plaintiff cannot place Brewer in front and to the left of

the cab of Coggins' truck, whereupon a forward movement with the wheels turned

extremely to the left might have struck Brewer.  The eye-witnessed facts simply do not

bear out this scenario.

        Brewer, deposed shortly before his death, himself stated that he was positioned

directly even with the door of Coggins' truck.  Additionally, the truck was merging right

onto Gallatin, which would have turned the truck away from Brewer, not to the left.

        Then, in his deposition, Brewer once testified that he was struck when Coggins'

12

truck was swerving to avoid hitting Allen.  This testimony is unbelievable since at the time Brewer approached Coggins' truck, Coggins already had successfully navigated past Allen, the pedestrian in the wheelchair who was himself in the roadway.  Coggins' truck was at a complete and dead stop before Brewer ever approached the truck.  Any movement by Coggins to his left to avoid contacting Allen had long since ended before Brewer entered the roadway, as Coggins was sitting still.  Thus, any attempt to argue Coggins swerved to miss Allen and came into contact with Brewer is improbable as well as impossible.

Then, in his deposition Brewer, in seeking to describe how the accident occurred, says he was "pulled" under the truck.  He does not satisfactorily explain how he was "pulled" under the truck.  Brewer, by his own admission, was highly intoxicated at the time and simply does not remember what happened and cannot offer any testimony of Roger Coggins' negligently operating his Boyd Bros. Transportation tractor-trailer.

In summation, without any liability-establishing testimony, this court is persuaded that Coggins did not operate the Boyd Bros. Transportation tractor-trailer in a negligent or reckless manner.

## **CONCLUSION**

Having applied the appropriate juridical principles to the undisputed material facts of this lawsuit, this court is persuaded to grant defendants' Motion to Strike [docket # 16] and Motion for Summary Judgment [docket # 17].  This court finds that Victor E. Holloman is not qualified to offer an opinion in this case.  This court also finds that plaintiff has failed to produce any credible evidence to establish that Roger

13

Coggins operated his vehicle in a negligent and reckless manner.  Plaintiff has not

produced any credible evidence to rebut the testimony of Roger Coggins and Joseph

Pettit that Randy Brewer, after first stepping away from Coggins' truck, then moved

forward into the path of the oncoming truck.  Therefore, this court grants defendants'

motion for summary judgment and dismisses this lawsuit with prejudice.  The court will

enter a separate Final Judgment in accordance with the local rules.

SO ORDERED AND ADJUDGED this the 17th day of September, 2007.

s/ HENRY T. WINGATE
CHIEF UNITED STATES DISTRICT JUDGE


Civil Action No. 3:05-cv-254 HTW-LRA
Order Granting Motion to Strike and Motion
   for Summary Judgment

14